UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| MARIA BALE, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Case No. 15-CV-0577-CVE-PJC** |
| | ) | |
| BOARD OF COUNTY | ) | |
| COMMISSIONERS, TULSA COUNTY, | ) | |
| STATE OF OKLAHOMA; TULSA | ) | |
| COUNTY JUVENILE BUREAU; and | ) | |
| FOURTEENTH JUDICIAL DISTRICT, | ) | |
| TULSA COUNTY | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

## OPINION AND ORDER

Now before the Court are the following motions: the Motion to Dismiss Party and Motion

to Dismiss Complaint and Brief in Support by Defendant Board of County Commissioners of Tulsa

County (Dkt. # 24); Defendant Tulsa County Juvenile Bureau's Motion to Dismiss, with Brief in

Support (Dkt. # 33); the Fourteenth Judicial District's Motion to Dismiss and Brief in Support (Dkt.

# 44); Defendant Fourteenth Judicial District's Motion to Strike the Scheduling Order [DOC. 45]

and Brief in Support (Dkt. # 51); and Defendant Fourteenth Judicial District's Motion for Protective

Order and Brief in Support (Dkt. # 52). Defendant Board of County Commissioners, Tulsa County,

State of Oklahoma (the Board) argues that it cannot be considered plaintiff's employer and that

plaintiff has failed to state a claim upon which relief can be granted. The Tulsa County Juvenile

Bureau (TCJB) argues that plaintiff has failed to state a claim upon which relief can be granted. The

Fourteenth Judicial District, Tulsa County (Judicial District) argues that it has sovereign immunity

from suit and that it is not an entity that is capable of suing or being sued.

## I.

Maria Bale alleges that she was employed by TCJB beginning in April 2013, and she was classified as a Secretary II working in the secretarial pool to provide support services for the Intake and Probation Departments.  Kathy Anson and Sherry Beree hired Bale, and Bale reported to Anson while she was employed by TCJB.  On March 1, 2014, Bale told Anson that she intended to report to work late the next day, because she wanted to attend church on the morning of Ash Wednesday. Bale states that she is Catholic.  Anson told Bale that she could not report to work late and Anson allegedly said "What's with the ashes?"  Id. at 3.  Bale complained to Beree that Anson would not let her report to work late on March 2, 2014, and Beree told Bale to attend the church service and lie to Anson about why she was late to work.  Bale alleges that Beree conferred with Anson and that Anson began to frequently harass Bale.

On August 14, 2014, Bale alleges that she was called into a meeting with Beree and Anson, and Beree and Anson began to yell at her and Beree accused Bale of "stepping on Anson's toes." Id.  Bale requested to take the rest of the day off as personal time because she was so upset.  On August 15, 2014, Bale received a verbal warning from Anson for "spreading discontent in the workplace" after Anson overheard Bale speaking with a co-worker.  Id.  Bale subsequently received an unacceptable performance notice for laughing at rude comments made about Anson, for engaging in disrespectful conduct in a meeting on August 14, 2014, and for spreading discontent at the workplace.  About a month later, Bale was speaking to a co-worker on the phone and giggled at a comment made by the co-worker, and Anson asked Bale why she was giggling.  Bale responded that it had nothing to do with Anson and Anson said "Oh, I see."  Id. at 4.  Anson told Beree about the incident and Bale was told not to use the phone, email, or a computer to ridicule Anson, and Beree

2

told everyone in the office that no one was to speak on Bale's behalf.  Bale was sent home and a coworker who tried to stick up for Bale was disciplined.

Bale contacted an attorney and Bale's attorney sent a letter to Terry Tallent, the Tulsa County Human Resources Director, complaining that Bale had been disciplined based on unsubstantiated misconduct.  Bale's attorney also sent a letter to Brent Wolfe, the director of the TCJB, seeking to file a grievance against Beree and Anson.  Bale's employment was terminated on October 7, 2014 due to Bale's continued insubordination and detrimental effect on the workplace. Bale filed a charge of discrimination with the Equal Employment Opportunity Commission and she states that she received a right to sue letter on June 25, 2015.  Bale filed this case in Tulsa County District Court alleging claims of religious and national origin discrimination under  Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. (Title VII) (counts one and two), and retaliation under Title VII (count three).

## II.

In considering a motion to dismiss under Rule 12(b)(6), a court must determine whether the claimant has stated a claim upon which relief may be granted.  A motion to dismiss is properly granted when a complaint provides no "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544,  555 (2007). A complaint must contain enough "facts to state a claim to relief that is plausible on its face" and the factual allegations "must be enough to raise a right to relief above the speculative level."  Id. (citations omitted).  "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint."  Id. at 562.  Although decided within an antitrust context, Twombly "expounded the pleading standard for all civil actions."  Ashcroft v.

Iqbal, 556 U.S. 662, 684 (2009).  For the purpose of making the dismissal determination, a court must accept all the well-pleaded allegations of the complaint as true, even if doubtful in fact, and must construe the allegations in the light most favorable to claimant.  Twombly, 550 U.S. at 555; Alvarado v. KOB-TV, LLC, 493 F.3d 1210, 1215 (10th Cir. 2007); Moffett v. Halliburton Energy Servs., Inc., 291 F.3d 1227, 1231 (10th Cir. 2002).  However, a court need not accept as true those allegations that are conclusory in nature.  Erikson v. Pawnee County Bd. Of County Comm'rs, 263 F.3d 1151, 1154-55 (10th Cir. 2001).  "[C]onclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based."  Hall v. Bellmon, 935 F.2d 1106, 1109-10 (10th Cir. 1991).

## III.

### A.

The Judicial District argues, inter alia, that it is a fictitious entity that is not actually a political subdivision as a matter of Oklahoma law, and plaintiff must seek leave to amend if she intends to properly sue the State of Oklahoma.  Dkt. # 44, at 11-13.  Plaintiff has filed response to the Judicial District's motion and she "stands moot [sic] as she has no objections to the claims and points of law made within [the Judicial District's] Motion to Dismiss."  Dkt. # 46, at 2.  The Board argues that it is not plaintiff's employer for the purpose of Title VII, because it had no authority to exercise any control over her employment or take part in employment decisions and only the TCJB had such authority.  Dkt. # 24.  Plaintiff responds that the Court cannot rule on the Board's argument on a motion to dismiss due to the fact-intensive nature of the joint employer inquiry under Title VII.

Then-Attorney General of Oklahoma, Drew Edmondson, issued an opinion on employment liability as to whether "juvenile bureaus and their employees [are] State or county employees?"

4

2008 OK AG 30.  By statute, each county with a population of at least 80,000 people must establish a juvenile bureau, and the expenses of the juvenile bureau and the salaries of its employees are paid by the county in which the juvenile bureau is located.  OKLA. STAT. tit. 10A, § 2-4-101, 107.  The "judge of the Juvenile Division" sets the salary of juvenile bureau employees and limits on expenses that may be incurred by the juvenile bureau "subject to the general administrative authority of the county commissioners of the contracting county."  OKLA. STAT. tit. 10A, § 2-4-107.  The judge of the Juvenile Division exercises certain administrative powers, such as the power to appoint and remove the director of the juvenile bureau, but the director of the juvenile bureau has the authority to hire and fire counselors and other employees and manage the day-to-day affairs of the juvenile bureau.  The Attorney General considered several factors and reached the conclusion that employees of the juvenile bureau are employees of the county for the purpose of employment liability.  First, the juvenile bureau provides services to the county and a committee of county residents was created by statute to assist with the operation of the juvenile bureau.  OKLA. STAT. tit. 10A, § 2-4-109.  Second, the county pays all expenses of the juvenile bureau and salaries of employees of the juvenile bureau.  Third, the Attorney General noted that the judge of the Juvenile Division is a state employee, but the judge is not acting in a judicial capacity when providing administrative services for the juvenile bureau and the judge's authority is "subject to the general administrative authority of the county commissioners."  The Attorney General recognized that there are numerous statutory schemes imposing employment liability and he was not attempting to provide an answer for every possible scenario, and he specifically cited Title VII as a statute with a specific test for establishing whether an entity is an employer.

Plaintiff has named the Judicial District as a defendant and she claims that the chief judge of the Judicial District "is charged with administrative oversight of the [TCJB]." Dkt. # 21. The Judicial District argues that it merely a "fictional arm of the state" and it is not entity that is capable of being sued.[1] Dkt. # 44, at 12. Under Title VII, a "person" is defined to include "governments, governmental agencies, [and] political subdivisions." 42 U.S.C. § 2000e(a). By statute, Oklahoma has created 26 judicial districts but the statute authorizing the creation of judicial districts does not refer to the judicial districts as state agencies or entities. OKLA. STAT. tit. 20, § 92.1. The GTCA does not list a judicial district as an entity that is capable of being sued as a matter of Oklahoma law. OKLA. STAT. tit. 51, § 152(11). Plaintiff does not contest the Judicial District's argument that it was improperly named as a party and she has no objection to the Judicial District's request for dismissal. Dkt. # 46, at 2. The Board's motion to dismiss (Dkt. # 24) and reply (Dkt. # 30) could be construed to raise an argument that the State of Oklahoma has some liability for plaintiff's claims, but the Board has not submitted any authority suggesting that the Judicial District itself was properly named as a party. The Count has found no authority showing that the Judicial District is an independent state entity that is capable of being sued and plaintiff does not contest this issue, and the Judicial District should be dismissed as a party.

The Board argues that it exercises only "general administrative authority" over employees of the TCJB and it had no role in hiring, supervising, or terminating plaintiff's employment, and it

---

[1]      The Judicial District invokes the Oklahoma Governmental Tort Claims Act, OKLA. STAT. tit. 51, § 151 et seq. (GTCA) and claims that it is immune from suit because it is not a recognized political subdivision. However, Title VII abrogates the sovereign immunity of the states and the State of Oklahoma can be sued under Title VII if plaintiff's claims fall within the scope of that abrogation of sovereign immunity. The issue before the Court is not whether the state has sovereign immunity to plaintiff's claims but, instead, whether the Judicial District is an existing state entity that is capable of being sued.

claims that it cannot be treated as plaintiff's employer under Title VII. Under the joint employer test, courts treat independent entities as joint employers of the plaintiff "if the entities 'share or co-determine those matters governing the essential terms and conditions of employment.'" Bristol v. Bd. of County Commr's of County of Clear Creek, 312 F.3d 1213, 1219 (10th Cir. 2002). "Most important to control over the terms and conditions of an employment relationship is the right to terminate it under certain circumstances." Sandoval v. City of Boulder, Colorado, 388 F.3d 1312, 1324 (10th Cir. 2004). The Tenth Circuit has identified other factors that can be relevant to making the determination that separate entities are joint employers, and these factors include "the ability to 'promulgate work rules and assignments, and set conditions of employment, including compensation, benefits, and hours; . . . day-to-day supervision of employees, including employee discipline; and . . . control of employee records, including payroll, insurance, taxes and the like." Knitter v. Corvias Military Living, LLC, 758 F.3d 1214, 1226 (10th Cir. 2014).

In McClellan v. Bd. of County Commr's of Tulsa County, 2010 WL 4636328 (N.D. Okla. Nov. 5, 2010), the Honorable Terence Kern found that there was a fact issue precluding summary judgment on the issue of whether the Board was the joint employer of a former TCJB employee, because there was evidence that the Board "had actual or de facto control over [TCJB's] employees' decisions." Id. at *14. The evidence in McClellan showed that "(1) [the plaintiff] was hired through the 'Tulsa County' hiring process; (2) Tulsa County 'cut the checks to [the plaintiff] at all times prior to her termination; and (3) at least two of the individuals at [TCJB] with the power to supervise and terminate [the plaintiff] . . . were employees of Tulsa County." Id. McClellan is consistent with the rulings of other federal district courts located in Oklahoma where a county board of commissioners asserted that it should not be held liable as the joint employer of a former employee

7

of a juvenile bureau, and courts have rejected arguments that a board of county commissioners cannot be treated as the employer of a juvenile bureau's former employee as a matter of law. <u>Dixon v. Bd. of County Commr's of County of Oklahoma</u>, 2015 WL 5839364, *3 (W.D. Okla. Oct. 2015); <u>Reynolds v. Bd. of County Commr's of the County of Oklahoma</u>, 2014 WL 6455508, *2 (W.D. Okla. Nov. 13, 2014).

The Court finds that the Board's argument for dismissal should be denied at this stage of the case, because the Board has raised a fact-intensive argument that is better suited for resolution on a motion for summary judgment.  The Board acknowledges that it has "general administrative authority" over the judge of the juvenile division as to the salaries paid to employees of the TCJB and other administrative functions.  Dkt. # 24, at 8-9.  The Court has also considered the Attorney General's opinion, which provides extensive analysis of the roles of the county and state in the funding and operation of a juvenile bureau, and the Attorney General noted that all of the expenses of a juvenile bureau are provided by the county and all services provided by the juvenile bureau are for the benefit of the county.  The Attorney General also noted that the judge of the juvenile division acts as an agent of the county as to certain administrative matters and the county has general administrative authority over the judge of the juvenile division.  Although the Board argues that its authority over the TCJB is quite limited, this is a factual issue that cannot be resolved on a motion to dismiss and plaintiff has made a plausible argument that the Board could be considered a joint employer.

**B.**

The Board and the TCJB argue that plaintiff has failed to state a claim upon which relief can be granted, because she has failed to specifically identify any similarly situated employees who were

8

treated differently and she has not identified any specific instances when she was subjected to an adverse employment action because of her religion or national origin. The Board also argues that plaintiff has failed to state a retaliation claim under Title VII, because there is no close temporal proximity between her request to attend church on Ash Wednesday and her termination approximately seven month later.[2]

In Khalik v. United Air Lines, 671 F.3d 1188 (10th Cir. 2012), the Tenth Circuit explained how Twombly applies in employment discrimination cases. The plaintiff in Khalik alleged that she was the victim of workplace discrimination under Title VII and the Family and Medical Leave Act, 29 U.S.C. § 2601 et seq. (FMLA). The Tenth Circuit explained that Twombly created "a middle ground between heightened fact pleading, which is expressly rejected, and allowing complaints that are no more than labels and conclusions or a formulaic recitation of a cause of action, which the [Supreme] Court stated will not do." Khalik, 671 F.3d at1191 (quoting Robbins v. Oklahoma, 519 F.3d 1242, 1247 (10th Cir. 2008)). However, conclusory allegations of fact or law are not entitled to an assumption of truth and, in the context of an employment discrimination case, "general assertions of discrimination and retaliation, without any details whatsoever of events . . . are insufficient to survive a motion to dismiss." Id. at 1193. The Tenth Circuit found certain allegations to be conclusory and it disregarded the plaintiff's allegations that:

> (1) she was targeted because of her race, religion, national origin and ethnic heritage; (2) she was subjected to a false investigation and false criticism; and (3) Defendant's stated reason for the termination and other adverse employment actions were exaggerated and false, giving rise to a presumption of discrimination, retaliation, and wrongful termination.

---

[2]     TCJB's motion to dismiss does not seek dismissal of plaintiff's retaliation claim and this issue is raised by the Board only.

Id.  The Tenth Circuit accepted as true the following allegations:

> (1) Plaintiff is an Arab–American who was born in Kuwait; (2) Plaintiff's religion
> is Islam; (3) Plaintiff performed her job well; (4) Plaintiff was grabbed by the arm
> in the office; (5) Plaintiff complained internally about discrimination; (6) Plaintiff
> also complained internally about being denied FMLA leave; (7) Plaintiff complained
> about an email that described a criminal act; and (8) Defendant terminated Plaintiff's
> employment position.

Id. at 1193-94.  These allegations were insufficient to state a claim because the plaintiff failed to

give defendant adequate notice of the specific discriminatory conduct giving rise to her claims.  Id.

at 1194.  Although every fact need not be known to the plaintiff at the pleading stage of the case,

it was reasonable to assume that an employment discrimination plaintiff could describe how he or

she was treated and assert some facts suggesting that any mistreatment was motivated by a

discriminatory animus.  Id.  The plaintiff had not alleged anything other than conclusory allegations

of workplace discrimination, and she had not stated a plausible claim under the Twombly standard.

Accepting the well-pleaded allegations of the amended complaint as true, the Court finds that

plaintiff has adequately alleged a claim of religious discrimination but she has alleged no non-

conclusory facts that would support a claim of national origin discrimination.  Plaintiff alleges that

she requested permission to arrive for work late on Ash Wednesday so that she could attend a church

service, and Anson denied her request and said "what's with the ashes?"  Dkt. # 21, at 3.  Beree told

plaintiff to go to the church service and make up another explanation for being late to work, and  it

appears that plaintiff actually did go to the Ash Wednesday service.  Id.  However, plaintiff claims

that Anson and Beree began a practice of disciplining plaintiff for unsubstantiated reasons and

falsely accused plaintiff of ridiculing Anson.  Plaintiff alleges that Anson and Beree began to treat

her differently than other employees after she requested to attend the Ash Wednesday service, but

she claims that other non-Catholic employees were "allowed to observe their religious beliefs and

practices without interference." Id. at 6. For the purpose of ruling on a motion to dismiss, these allegations are sufficiently specific and non-conclusory to provide defendants notice of the basis for plaintiff's religious discrimination claim. Defendants argue that plaintiff fails to specifically identify any similarly situated non-Catholic workers who were treated differently, but this level of specificity is not required at the pleading stage. As to plaintiff's claim of national origin discrimination, the only allegations made in support of this claim are that plaintiff is Hispanic and that she was treated differently because she was Hispanic. These are the type of conclusory allegations that the Tenth Circuit found insufficient in Khalik and there are no non-conclusory allegations suggesting that plaintiff's national origin played any factor in plaintiff's treatment at work or her eventual termination. Defendant's request to dismiss plaintiff's religious discrimination claim under Title VII should be denied, but plaintiff has not alleged any facts supporting a claim of national origin discrimination and this claim (count two) should be dismissed.

The Board also seeks dismissal of plaintiff's retaliation claim on the ground that there is no close temporal proximity between plaintiff's request to report to work late on Ash Wednesday and her termination in October 2014. Under Title VII, an employer may not retaliate against an employee for engaging in protected activity. To come forward with a prima facie case of retaliation, an employee must show "(1) that [she] engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action." Somoza v. University of Denver, 513 F. 3d 1206, 1212 (10th Cir. 2008). Although plaintiff has no burden to come forward with evidence at this stage of the case, the Court finds that the elements of the prima facie case provide a reasonable framework for evaluating whether plaintiff has sufficiently

11

alleged a claim of retaliation.  Plaintiff alleges that she requested to attend a religious service on Ash Wednesday and she complained to Beree when Anson denied her request.  She also claims that her attorney sent letters to the human resources director of Tulsa County and the director of TCJB complaining about Anson's and Beree's conduct.[3]  These allegations are sufficient to put defendant on notice of the alleged protected activity providing a basis for plaintiff's retaliation claim.  Plaintiff claims that her employment was terminated about two weeks after her attorney sent the letters to TCJB and Tulsa County.  Evidence of a close temporal proximity between protected activity and an adverse employment action can support a finding that the two events are related.  Annett v. University of Kansas, 371 F.3d 1223, 1240 (10th Cir. 2004).  There is a sufficiently close temporal proximity between the alleged protected conduct and plaintiff's termination, and this supports an inference that the two events were related.  The Court finds that plaintiff has alleged a plausible retaliation claim  and the Board's request to dismiss plaintiff's retaliation claim should be denied.

IT IS THEREFORE ORDERED that the Fourteenth Judicial District's Motion to Dismiss and Brief in Support (Dkt. # 44) is **granted**.  The Fourteenth Judicial District, Tulsa County is terminated as a party to this case.

IT IS FURTHER ORDERED that the Motion to Dismiss Party and Motion to Dismiss Complaint and Brief in Support by Defendant Board of County Commissioners of Tulsa County (Dkt. # 24) is **granted in part** and **denied in part**: the motion is granted as to the dismissal of

---

[3]    The Board asks the Court to disregard plaintiff's allegations concerning the letters to the human resources director of Tulsa County and the director of TCJB, because plaintiff does not allege that the letters were forwarded to the decision makers who terminated her employment.  Dkt. # 24, at 15 n.26.  That is a fact issue of which only TCJB and Tulsa County would have knowledge of at this stage of the case, and the Court will not disregard plaintiff's allegations concerning the letters.

plaintiff's claim of national origin discrimination (count two) but denied as to the dismissal of plaintiff's religious discrimination claim (count one) and retaliation claim (count three).

**IT IS FURTHER ORDERED** that Defendant Tulsa County Juvenile Bureau's Motion to Dismiss, with Brief in Support (Dkt. # 33) is **granted in part** and **denied in part**: the motion is granted as to the dismissal of plaintiff's claim of national origin discrimination (count two) but denied as to the dismissal of plaintiff's religious discrimination claim (count one).

**IT IS FURTHER ORDERED** that Defendant Fourteenth Judicial District's Motion to Strike the Scheduling Order [DOC. 45] and Brief in Support (Dkt. # 51) and Defendant Fourteenth Judicial District's Motion for Protective Order and Brief in Support (Dkt. # 52) are **moot**.[4]

**DATED** this 21st day of June, 2016.

_Claire V Eagn_

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE

---

[4] The Judicial District objected to participating in discovery until the Court ruled on the pending motions to dismiss, and the Judicial District asked the Court to strike the scheduling order. Dkt. ## 51, 52. Those motions are moot in light of this Opinion and Order granting the Judicial District's motion to dismiss. The remaining parties have conflicting opinions as to the need to amend the scheduling order, and the Court declines to rule on the need to amend the scheduling order until the remaining parties file a joint motion more specifically setting out any necessary amendments to the scheduling order.

13